1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ROBERT LEE GRIFFIN,                    Case No.  1:17-cv-01137-DAD-HBK

12               Petitioner,                FINDINGS AND RECOMMENDATIONS TO
                                            DENY PETITION FOR WRIT OF HABEAS
13        v.                                CORPUS[1]

14   JOEL D. MARTINEZ,                       FOURTEEN-DAY OBJECTION PERIOD

15               Respondent.                (Doc. No. 30)

16

17          Petitioner Robert Lee Griffin ("Petitioner" or "Griffin"), a state prisoner, is proceeding

18   *pro se* on his amended petition for writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. No. 30).

19   Petitioner makes four claims of trial court error, as more fully discussed *infra*.  Respondent filed

20   an answer to the petition on June 15, 2021 (Doc. No. 43).  Petitioner did not file a reply to

21   Respondent's answer.  For the reasons set forth below, the undersigned recommends the Court

22   deny Petitioner any relief on his petition, as amended, and decline to issue a certificate of

23   appealability.

24                                    **I. BACKGROUND**

25        **A.  Procedural History**

26          Griffin filed his initial petition on August 23, 2017.  (Doc. No. 1).  On October 24, 2017,

27   ────────────
     [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
28   (E.D. Cal. 2019).

Respondent filed an answer to the petition and lodged the relevant record with the court.  (Doc. Nos. 10, 12, 13).  On June 25, 2018, Petitioner was granted a stay of this case to exhaust his claims.  (Doc. No. 19).  On March 30, 2020, after exhausting his claims, Petitioner filed an amended petition, which contained timely claims of trial court error and untimely claims of ineffective assistance of counsel.  (Doc. No. 30).  On August 3, 2020, the Court issued Findings and Recommendations to dismiss Petitioner's untimely claims and to allow Petitioner to proceed with his timely claims only.  (Doc. No. 37).  On April 14, 2021, the District Court adopted these Findings and Recommendations, dismissing Petitioner's untimely claims.  (Doc. No. 39).  Accordingly, the undersigned addresses herein only Petitioner's four timely claims of trial court error.

Specifically, Petitioner claims that the trial court violated his constitutional rights when it: (1) admitted evidence of petitioner's prior misdemeanor conviction and images found on his computer which  (a) violated his due process rights and denied him a fair trial; and (b) lightened the prosecution's burden of proof; (2) gave an erroneous instruction on child sexual abuse accommodation syndrome ("CSAAS"); (3) erroneously excluded evidence concerning a victim's prior, unrelated instances of abuse; and (4) failed to give the jury a limiting instruction related to the "fresh complaint" doctrine.  (Doc. No. 30 at 3).  In passing, Petitioner claims the trial court erred when it excluded prior criminal conduct of key prosecution witnesses.  (Doc. No. 30 at 3, 21).  However, Petitioner provides no information or argument in support of this claim.  Mere conclusions of violations of federal rights without specifics do not state a basis for federal habeas relief.  *Mayle v. Felix*, 545 U.S. 644, 655 (2005).  Moreover, the Court finds nothing in the record demonstrating that Petitioner exhausted this claim before the state courts.  The undersigned accordingly does not analyze this passing claim.

### B. Facts Based Upon The Record

In 2014, a Fresno County jury convicted Griffin of two counts of committing a lewd act upon a child under the age of 14 and one count of sexual penetration of a child age 10 or younger. *People v. Griffin*, No. F068898, 2016 Cal. App. Unpub. LEXIS 7226, at *1 (Cal. 5th App. Mar. 24, 2017).  Griffin was sentenced to a total aggregate term of 131 years to life in state prison.

(*Id.*).  The pertinent facts of the underlying offenses, as summarized by the California Court of

Appeal as set forth below.  A presumption of correctness applies to these facts.  *See* 28 U.S.C.

§ 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

### *Overview*

Griffin met I. in January of 2011 when she was nine years old. Griffin worked with I.'s father, and he became friends with I.'s entire family.  At the time, Griffin lived in a trailer in Clovis. Griffin had a daughter, Rosie. I. frequently visited Rosie at the trailer.  Griffin, Rosie and I. would watch television and play board games together.  I. continued to go over to Griffin's trailer even after Griffin and Rosie had a falling out and Rosie no longer had contact with her father.  I. usually went with her best friend, M., and sometimes their younger siblings would join them, including I.'s sister, H.

In August of 2011, Griffin moved to a barn-like structure in Fresno he was renovating for the property owner.  I. and M. continued to visit him there, often spending the night, until I.'s mother learned in mid-November 2011 that Griffin was prohibited from having any contact with children.  The basis for the no-contact order was not disclosed, but it was stipulated that Griffin had been convicted in 2006 of misdemeanor sexual exploitation of a child (Pen. Code, § 311.3, subd. (a)) for videotaping his eight- and 12-year-old nieces in the bathroom and then using the videotape for the purpose of sexual stimulation.

### *Victims' Accounts*

At trial, I., who was then 12 years old, testified that Griffin first made her feel uncomfortable at the trailer when she and M. were having a "foam fight" with shaving cream.  Griffin grabbed I., put his hand under her shirt and rubbed her upper chest with shaving cream, laughing.  When I. told Griffin to stop, he went over to M. and did the same thing to her.

On subsequent occasions, Griffin made I. uncomfortable by wrapping his arms around her while she was lying in bed, hugging her so tightly with his belly against her back that she could hardly breathe.  Griffin told I. that he loved her.  If I. did not respond in kind, Griffin would become mad and "throw a fit."  I. told an interviewer at the Multidisciplinary Interview Center (MDIC) that this type of "snuggling" occurred at least five times at the trailer.  One time, I. looked at Griffin's cell phone and saw a photograph of her younger sister, H., asleep in her nightgown and underwear with her legs spread open.  Griffin grabbed the phone from I. and told her she was not allowed to look at the photographs. When I. told Griffin she was going to tell her father, Griffin said he would kill him if she did.  He also threatened to kill her dogs if they tried to protect her father.

After Griffin moved to the barn, I. continued to visit him for sleepovers. When she did, Griffin would place his hands down her pants as she was falling asleep. I. told the MDIC interviewer Griffin reached under her pajamas and rubbed her thighs before touching her "privates."

I. testified that on one occasion, as she was drifting off to sleep on a couch, Griffin put his hands inside her underwear and inserted a finger into her vagina. She felt his fingernails digging into her and it hurt. I. told the MDIC interviewer that the penetration lasted about two minutes until she moved away and he stopped.

I. testified that Griffin threatened to "kidnap" her because he said her parents did not treat her well. He threatened to kill her father if he would not let Griffin take her away with him. Griffin called I. "Princess Number One" and M. "Princess Number Two." I. had another nickname as well, and Griffin had that nickname tattooed on his arm. Griffin at times pleaded with I. to come over to his house. He even called her parents to try and cancel other plans she might have. Griffin bought I. a laptop computer, and he gave I. and M. at least $20 each time they visited, which totaled about $300.

M., who was 13 years old at the time of trial, testified that she and I. were next-door neighbors and M.'s mother became friends with Griffin through I.'s parents. After Griffin moved to the barn, M. and I. spent almost every weekend there. On one occasion, while M. was in a downstairs room, Griffin touched her on the outside of her "private part." On another occasion, Griffin kissed M. on the lips. Both made M. feel uncomfortable. Griffin told M. he was going to have her name tattooed on his body as well. M. testified that Griffin threatened to kidnap her and kill her mother.

M. told the MDIC interviewer that she and I. spent a weekend at the barn. On the first night, M. and I. were talking in bed when Griffin came into the room and told them to "snuggle" with him. Griffin got on the bed and hugged both girls. He then placed his hand under M.'s shirt and rubbed her breasts. He also kissed her on the jaw and neck. The next night, some other girls were at the barn as well, and they painted and had pizza. At bedtime, M. and I. were lying together when Griffin came in and again said, "Let's snuggle." When they resisted, Griffin said, "You have to snuggle with me or I'm gonna be mad at you guys." They continued to resist, and Griffin eventually left the room. M. fell asleep, but awoke when she felt Griffin place his hand in her pants and rub her between the legs with a lot of pressure. He also rubbed her buttocks and told her he loved her. At one point she felt Griffin's hand "inside" her vagina. M. was too frightened to tell Griffin to stop.

M. also told the MDIC interviewer that, while Griffin was giving her a ride in his truck, he placed his hand down her pants, and rubbed and inserted his fingers into her vagina. He also touched her breasts a second time when she was in the bathroom.

///

4

### *Disclosure of the Assaults*

M. eventually told her older sister, Vanessa, that "things were happening that weren't supposed to and she didn't feel comfortable anymore going over" to Griffin's. M. and I. told Vanessa that Griffin "cuddled" and slept in the same bed as them, but they did not disclose to her that he had touched their private parts. They also told Vanessa they had seen photos on Griffin's phone of H. in her underwear.

Vanessa told her mother, Victoria, what M. and I. had told her. Victoria, in turn, told I.' mother, Stella, and prohibited M. from going to Griffin's house for a while.

In mid-November 2011, a confidential informant reported to authorities that Griffin was having contact with children despite being prohibited from doing so. After law enforcement learned I. and her siblings were among those children, that information was provided to Child Protective Services (CPS). A CPS worker interviewed the children at their school and then referred the case to the sheriff's department for investigation.

Stella gave the sheriff's department a letter I. had written to her on December 20, 2011. Stella did not disclose the contents of the letter during testimony. Stella also gave the sheriff's department multiple letters Griffin had written and mailed to I. One of those letters stated: "Sorry for everything except loving you and spoiling you rotten. Still plan on doing that forever. There is nothing that will keep me from you, [I.,] [c]ount on it. Love, Robert." Another letter included the post-script: "If you talk to [M.] tell her I love her and miss her, okay. See you soon. Nobody, police or anyone, will keep me from you, [I.,] and you know I'm not playing around. I'll die for you and I will personally remove anyone that tries to hurt you. This too you know is the truth. Forever my love, Robert Lee Griffin, Jr."

I. testified she was slow to report the abuse to her mother because she had been through a similar situation before and did not want to go "through what I had to before." She testified she wanted to tell the truth about what happened because Griffin "ruined" her life and she wanted to "make sure that he did go to jail."

### *Computer Evidence*

Sheriff's Detective David Rippe of the Internet Crimes Against Children Task Force conducted a forensic examination of Griffin's laptop computer. Rippe testified that Griffin's computer showed several Internet searches had been conducted under Griffin's user profile. Search terms included: "12-year-old erotic nude picks [sic]"; "12-year-old girls fucking"; "[n]ude images of preteen girls"; "[p]reteen girls fucking"; "ten-year-old ... NUD"; and "fuck child pedo loli top." Ridde testified that "pedo" is an abbreviation for pedophile and "loli" an abbreviation for "Lolita," a common search term for child pornography.

Detective Rippe discovered numerous "thumbnail images" on Griffin's hard drive of scantily dressed young girls in provocative poses.  Eighteen of these images were printed in enlarged form and shown to the jury.

Detective Rippe also discovered several photos of I. and M. under Griffin's user profile.  Some of the photos of I. were accompanied by titles, including "Mine," "Haunting my dreams," and "Sweetheart."  There was also a photo of Griffin, shirtless, entitled "Daddy Griff."

### *Expert Testimony*

Susan Napolitano, a psychologist, testified as an expert on Child Sexual Abuse Accommodation Syndrome (CSAAS), and explained the five aspects or "steps" that are used to help understand children's responses to trauma, particularly sexual abuse.

According to Napolitano, child sex abuse victims rarely report the abuse right away and, when they do, they often reveal it in piecemeal fashion.  The "delayed" reporting aspect is often linked to the "secrecy" aspect of CSAAS, which is associated with "grooming," in which the perpetrator earns the trust of his victims by providing gifts and privileges.

### *Defense*

Rosanne Garcia, the CPS worker who interviewed I. at school, testified that I. initially denied she had ever been touched inappropriately.  She then began to cry and said she had been touched when she was five years old and the man who did it went to prison for life.  I. told Garcia that, if anyone touched her that way again, she would tell her mother.

I. told Garcia she stayed overnight at Griffin's house and that he was nice to her.  She also told Garcia that Griffin had given her and her friends gifts, including jewelry and a touch pad computer.  I. told Garcia she considered Griffin a part of her family.  I. then said she and her siblings were no longer allowed to see Griffin, and I. began to cry again.  Garcia then interviewed Stella (I.'s mother), who told her I. initially denied she had been molested by Griffin, but later wrote a letter disclosing she had been.

Beatrice Grider testified Griffin came to live in a barn on her property in August of 2011 and was in the process of converting it into an apartment.  Young girls often visited Griffin at the barn, but Grider never saw Griffin in bed with any of them, although she described one time when she went to the barn and Griffin and "the girls" were upstairs and it was dark.  Grider told Griffin she did not want the girls around anymore because they were always coming into her house to use the bathroom.

On cross-examination, Grider stated that, after Griffin was released from custody in February of 2012, he lived with her, they had discussed marriage, and she had paid $3,000 to help him retain a

lawyer.

Griffin's son, Dylan, testified that he lived with Griffin in the barn for four or five months, and that he saw children visiting his father on about 10 occasions.  The children slept in the living room, while Griffin slept in his own room and Dylan slept in the upstairs loft.  Dylan never heard the children complain, nor did they seem afraid.  Griffin's sister, Diana Solorio, testified that Griffin had always behaved "[f]ine" around her two children — a daughter, age nine at the time of trial, and a son, age 12.

Griffin's aunt, Sheryl Robledo, described Griffin's interactions with his own children as "definitely appropriate."  Robledo testified she had seen Griffin attend church while many children were there and his behavior was "[c]ompletely appropriate."

### ***Rebuttal***

Sheriff's Deputy Tim Herzog testified that he interviewed I. in January of 2012, based on a report he received from CPS of possible sexual assault.  I. told Herzog she sometimes spent the weekend at Griffin's house in the country, even when his own children were not there.  I. told Herzog that Griffin had given her a video game, a laptop computer, and money.  She told Herzog that Griffin liked to "snuggle" with her and M. at bedtime, he told them he wished he could kidnap both of them, and he called them "Princess One" and "Princess Two."  I. said there was also inappropriate snuggling while she was on the couch in both Griffin's trailer and the barn.  Specifically, I. told Herzog that on three or four occasions, as she was falling asleep, Griffin reached under her shirt and touched her chest, and then placed his hand down her pants and touched her privates.  Griffin told I. that, if she refused to snuggle with him, he would take away her laptop computer and video games.

*Griffin*, No. F068898, at *2-12.

## II.  APPLICABLE LAW

### AEDPA General Principles

A federal court's statutory authority to issue habeas corpus relief for persons in state custody is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  AEDPA requires a state prisoner seeking federal habeas relief to first "exhaus[t] the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  If the state courts do not adjudicate the prisoner's federal claim "on the merits," a *de novo* standard of review applies in the federal habeas proceeding; if the state courts do adjudicate the claim on the merits, then the AEDPA mandates a deferential, rather than *de novo*, review.  *Kernan v.*

1    *Hinojosa*, 136 S. Ct. 1603, 1604 (2016).  This deferential standard, set forth in § 2254(d), permits

2    relief on a claim adjudicated on the merits, but only if the adjudication:

3    (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established Federal law, as
4    determined by the Supreme Court of the United States; or

5    (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the
6    State court proceeding.

7    28 U.S.C. § 2254(d).  This standard is both mandatory and intentionally difficult to satisfy.

8    *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018); *White v. Woodall*, 572 U.S. 415, 419 (2014).

9        "Clearly established federal law" consists of the governing legal principles in the

10   decisions of the United States Supreme Court when the state court issued its decision.  *White*, 572

11   U.S. at 419.  Habeas relief is appropriate only if the state court decision was "contrary to, or an

12   unreasonable application of," that federal law.  28 U.S.C. § 2254(d)(1).  A decision is "contrary

13   to" clearly established federal law if the state court either: (1) applied a rule that contradicts the

14   governing law set forth by Supreme Court case law; or (2) reached a different result from the

15   Supreme Court when faced with materially indistinguishable facts.  *Mitchell v. Esparza*, 540 U.S.

16   12, 16 (2003).

17       A state court decision involves an "unreasonable application" of the Supreme Court's

18   precedents if the state court correctly identifies the governing legal principle, but applies it to the

19   facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S.

20   133, 134 (2005), or "if the state court either unreasonably extends a legal principle from

21   [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to

22   extend that principle to a new context where it should apply."  *Williams v. Taylor*, 529 U.S. 362,

23   407, (2000).  "A state court's determination that a claim lacks merit precludes federal habeas

24   relief so long as fair-minded jurists could disagree on the correctness of the state court's

25   decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  The petitioner must show that the

26   state court decision "was so lacking in justification that there was an error well understood and

27   comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 103.

28

When reviewing a claim under § 2254(d), any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 571 U.S. 12, 18 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

As discussed earlier, for the deferential § 2254(d) standard to apply there must have been an "adjudication on the merits" in state court.  An adjudication on the merits does not require that there be an opinion from the state court explaining the state court's reasoning.  *Richter*, 562 U.S. at 98.  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id*. at 99.  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  *Id*. at 99-100.  This presumption applies whether the state court fails to discuss all the claims or discusses some claims but not others.  *Johnson v. Williams*, 568 U.S. 289, 293, 298-301 (2013).

While such a decision is an "adjudication on the merits," the federal habeas court must still determine the state court's reasons for its decision in order to apply the deferential standard.  When the relevant state-court decision on the merits is not accompanied by its reasons,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.  But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  The federal court "looks through" the silent state court decision "for a specific and narrow purpose—to identify the grounds for the higher court's decision, as AEDPA directs us to do."  *Id*. at 1196.

When . . . there is no reasoned state-court decision on the merits,

9

1

the federal court "must determine what arguments or theories . . .
could have supported the state court's decision; and then it must ask
2
whether it is possible fairminded jurists could disagree that those
arguments or theories are inconsistent with the holding in a prior
3
decision of this Court." *Richter*, 562 U.S. at 102.  If such
disagreement is possible, then the petitioner's claim must be denied.
4
*Ibid.*

5
*Sexton*, 138 S. Ct. at 2558.

6
### III.  ANALYSIS

7
For purposes of reviewing each of Petitioner's claims of trial court error, the Court

8
considers the last reasoned decision on Petitioner's claims—that of the California Court of

9
Appeal.

10
**A.  Ground One: (i) Evidence of Prior Conviction and Computer Images**

11
**1.  Background**

12
In his first ground for relief, Petitioner argues his trial was fundamentally unfair due to the

13
admission of evidence of his prior conviction and data and images from his computer which

14
violated his due process rights.  (Doc. No. 30 at 27-28).  Respondent argues the California Court

15
of Appeal's rejection of Petitioner's claim was not unreasonable because there is no clearly

16
established Supreme Court law establishing that admission of such evidence violates a

17
petitioner's constitutional rights.  (Doc. No. 43 at 20-21).

18
Prior to trial, the prosecution moved to admit evidence of Petitioner's 2006 conviction for

19
sexual exploitation of a child for secretly videotaping his eight- and twelve-year-old nieces while

20
they showered and used the bathroom.  (LD[2] 10 at 155-163).  The prosecution sought to admit the

21
fact of this crime.  (*Id.*).  The trial court admitted the evidence, finding it probative under

22
California Evidence Code § 1108 because it showed prior sexual misconduct with children the

23
same age as the victims in case.[3]  The trial court also found that the evidence was admissible

24
under California Evidence Code § 1101(b) for purposes of showing intent and/or lack of mistake.[4]

25

26
[2] The Court uses "LD" to refer to the lodged documents of state court records, lodged by the Respondent in paper form with the Court.  (*See* Doc. No. 12).

27
[3] California Evidence Code § 1108 allows prosecutors to present evidence of a defendant's past sexual misconduct when on trial for a sex crime.  It appears the trial court made this evidentiary ruling during an in-chamber conference.

28
[4] California Evidence Code § 1101 allows evidence of prior bad acts to be used to prove, *inter alia*,

The trial court instructed the jury as follows: "The parties have stipulated that the defendant committed the crime of Penal Code Section 311.3(a), sexual exploitation of a minor, on a previous occasion." (LD 19 at 1022). The trial court accompanied the instruction with a limiting instruction.[5] (*Id.*).

At trial, the prosecutor also sought to introduce "child erotica" pictures and pictures of the victims from this case that had been found on Griffin's computer, including the file names of these pictures. The prosecution also sought to introduce a list of various internet sites that depict child pornography which were visited by Griffin. (LD 16 at 276-80). The trial court admitted the photos, file names, and website addresses under California Evidence Code § 1101(b), finding the evidence admissible to show intent and/or lack of mistake. (LD 16 at 292-94). The trial court instructed: "The People presented evidence that the defendant knowingly possessed evidence on his computer including file names, search terms, photographs, and names assigned to the photographs." (LD 19 at 1019-20). The trial court again accompanied the instruction with a limiting instruction.[6]

### 2. State Appellate Court Decision

Before the California Court of Appeal, Griffin claimed that the trial court abused its discretion when admitting his prior conviction and the evidence found on his computer because the evidence was more prejudicial than probative and therefore violated his due process rights.

---

motive, opportunity, intent, preparation, plan, and absence of mistake.

[5] The limiting instruction stated: "You may but are not required to conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses and based on that decision also conclude the defendant was likely to commit and did commit lewd acts upon a child and sexual penetration of a child ten years or younger, as charged here. That conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove the defendant is guilty of the [charged offenses]. The People must still prove each charge beyond a reasonable doubt." (LD 19 at 1022).

[6] The limiting instruction stated: "The People presented evidence that the defendant knowingly possessed certain information on his computer, specifically file names, photographs, search terms and names for photographs on the computer . . . If you decide the defendant knowingly possessed the information on the computer, you may, but are not required to consider that evidence for the limited purpose of deciding whether or not the defendant acted with the intent to arouse, appeal to or gratify his lust or sexual desire in the commission of Counts 1 and 3[.] You may also consider that evidence in determining whether or not the defendant's alleged actions were the result of a mistake or accident. Do not consider this evidence for any other purpose. If you conclude that the defendant committed the act, the conclusion is only one factor to consider among the other evidence. It is not sufficient by itself to prove the defendant is guilty of the charged crimes. The People must still prove each charge and allegation beyond a reasonable doubt." (LD 19 at 1019-20).

1   (LD 1 at 22-47).  The appellate court rejected Griffin's claims.  *See Griffin*, No. F068898, at *24-

2   25.  In pertinent part, the appellate court found that:

> '*The admission of relevant evidence will not offend due process
> unless the evidence is so prejudicial as to render the defendant's
> trial fundamentally unfair.*'  [Citation.]"  (*People v. Jablonski*
> (2006) 37 Cal.4th 774, 805.)  "Only if there are no permissible
> inferences the jury may draw from the evidence can its admission
> violate due process.  Even then, the evidence must 'be of such
> quality as necessarily prevents a fair trial.'  [Citations.]  Only under
> such circumstances can it be inferred that the jury must have used
> the evidence for an improper purpose."  (*Jammal v. Van de Kamp*
> (9th Cir. 1991) 926 F.2d 918, 920; *see People v. Kelly* (2007) 42
> Cal.4th 763, 787.)  As the United States Supreme Court has
> explained, "[b]eyond the specific guarantees enumerated in the Bill
> of Rights, the Due Process Clause has limited operation.  We,
> therefore, have defined the category of infractions that violate
> 'fundamental fairness' very narrowly."  (*Dowling v. United States*
> (1990) 493 U.S. 342, 352.)  The evidence relating to [Petitioner]'s
> prior conviction and possession of child pornography and related
> computer searches was certainly damaging.  However, although the
> evidence was abhorrent and disturbing because it involved child
> pornography, the evidence did no more than accurately portray
> [Petitioner]'s prior offense and the child pornography found on his
> computer.  We cannot conclude that the presentation of this
> evidence rendered [Petitioner]'s trial fundamentally unfair.

15   *Griffin*, No. F068898, at *24-25.

16   **3.  Analysis**

17         Evidentiary rulings by the state court are not subject to habeas review unless (1) the ruling

18   violates federal law by encroaching on specific constitutional or statutory provision; or (2) by

19   denying the defendant of a fundamentally unfair trial as guaranteed by due process.  *Pulley v.*

20   *Harris*, 465 U.S. 37, 41 (1984).  *See also Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995)

21   ("The admission of evidence does not provide a basis for habeas relief unless it rendered the trial

22   fundamentally unfair in violation of due process.") (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68

23   (1991).  To obtain relief on an evidentiary ruling, the petitioner must show that the error was of a

24   constitutional dimension and that it was not harmless.  *Brecht v. Abrahamson*, 507 U.S. 619

25   (1993).  The error must have had "'a substantial and injurious effect' on the verdict."  *Id*. at 623.

26         The Supreme Court has not expressed an opinion "on whether a state law would violate

27   the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to

28   commit a charged crime."  *Estelle*, 502 U.S. at 75 n.5; *Kipp v. Davis*, 971 F.3d 939, 965 (9th Cir.

1  2020) (same); *Alberni v. McDaniel*, 458 F.3d 860, 863 (9th Cir. 2006) (citing *Garceau v.*

2  *Woodford*, 275 F.3d 769 (9th Cir. 2001) rev'd on other grounds, 538 U.S. 202 (2003) (noting that

3  the "Supreme Court has never expressly held that it violates due process to admit other crimes

4  evidence for the purpose of showing conduct in conformity therewith" and that the Supreme

5  Court has denied certiorari on the issue at least four times).  Neither has the Supreme Court

6  "made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due

7  process violation sufficient to warrant issuance of the writ."  *Holley v. Yarborough*, 568 F.3d

8  1091, 1101 (9th Cir. 2009) (noting the lack of clearly established law on the issue and

9  accordingly declining to find a due process violation where trial court admitted evidence of a

10  lewd matchbook and several sexually explicit magazines).  With no Supreme Court precedent on

11  point as to whether evidence of prior crimes or bad acts admitted as propensity evidence violates

12  the due process clause, the California's state court's conclusion of this claim cannot be "contrary

13  to clearly established law" as defined by the U. S. Supreme Court.  *Torres v. Runnels*, 137 F.

14  App'x 96, 97 (9th Cir. 2005) (finding no due process violation by admission of evidence of

15  uncharged prior acts of sexual molestation because Supreme Court has never specifically rejected

16  such propensity evidence).

17         Further, the state court's finding that the evidence, although "damaging" did not render

18  Petitioner's trial fundamentally unfair is entitled to deference.  The appellate court properly cited

19  to and applied the standard from *Dowling v. United States*, which found that the erroneous

20  admission of evidence must violate "fundamental fairness" to violate the Due Process Clause.

21  *See* 493 U.S. 342, 352, (1990) (finding that the admission of certain testimony was constitutional

22  and did not violate "fundamental fairness" where, *inter alia*, the trial judge gave a limiting

23  instruction, and the testimony was at least circumstantially valuable in proving petitioner's guilt).

24  Griffin's prior conviction and the pictures and information on his computer was neither arbitrary

25  nor so prejudicial that it denied Griffin of fair trial.  *See Colley v. Sumner*, 784 F. 2d 984, 990 (9th

26  Cir. 1986);  *See United States v. Sneezer,* 983 F.2d 920, 924 (9th Cir.1992) (per curiam) (prior

27  bad acts admissible if (1) there is sufficient proof that defendant committed prior act, (2) prior act

28  is not too remote in time, (3) prior act is similar (if admitted to show intent), (4) prior act is used

13

to prove material element, and (5) probative value is not substantially outweighed by prejudice), *cert. denied,* 510 U.S. 836 (1993).  Further, any potential prejudice was tempered by the trial court's limiting instructions concerning both areas of this challenged evidence—noting that evidence of Griffin's 2006 conviction could in conjunction with the other evidence be used to show defendant was "predisposed or inclined" and "likely to commit" such an action, but "not sufficient by itself to prove" defendant's guilt.  (LD 19 at 1022).  Similarly, evidence of pictures and file names on Griffin's computer could be used to show intent of arousal or sexual gratification or whether his alleged actions were by mistake or accident, but evidence could not be considered for any other purpose and could not itself be used to prove Griffin's guilt.  (L.D. 19 at 1019-20).  Notably, Federal Rule of Evidence 404(b)(2) allows for the admission of such propensity evidence—it may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Clearly, the admission of such evidence is not a *per se* constitutional violation.

Thus, having reviewed the record, Griffin has not shown that the state court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme court or based upon an unreasonable determination of the facts in light of the evidence presented at trial.  The undersigned recommends this ground be denied on the merits.

**B.  Ground One (ii):  Improper Admitted Evidence Lightened Burden of Proof**

**1.  Background**

Griffin argues that the evidence admitted of his prior conviction and computer images, file names and search terms lightened the prosecutor's burden of proof in violation of his due process rights.  (Doc. No. 30 at 29-30).  Respondent does not address this argument.  The Court notes that Petitioner raised this issue below and the state court addressed it on the merits.  Thus, the Court will consider the claim because it is exhausted.

**2.  State Appellate Court Decision**

The state appellate court rejected Griffin's claim in a detailed discussion:

Griffin was charged with two violations of Penal Code section 288,

14

subdivision (a).  One of the elements of that offense is that the defendant must touch the victim "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of [himself] or the child."  (Pen. Code, § 288, subd. (a).)  "A violation of Penal Code, section 288, is not established unless there is proof of a specific intent of arousing, appealing to or gratifying the lust or passions or sexual desires of the defendant or of the child."  (*People v. Mansell* (1964) 227 Cal.App.2d 842, 847, 39 Cal. Rptr. 187, citing *People v. Jones* (1954) 42 Cal.2d 219, 223, 266 P.2d 38.)  "The purpose of the perpetrator in touching the child is the controlling factor . . .."  (*People v. Martinez* (1995) 11 Cal.4th 434, 444, 45 Cal. Rptr. 2d 905, 903 P.2d 1037.)  The specific intent to establish a violation of Penal Code section 288 can be established entirely by the manner of touching, as well as by any coercion, bribery, or deceit used to obtain the victim's cooperation or to avoid detection.  (*People v. Martinez, supra*, at p. 444; *People v. Jones, supra*, at p. 222.)

Griffin contends the evidence adduced at trial was "devoid" of "direct evidence" of his mental state and that the erroneously admitted evidence "greatly eased the prosecution's burden of proving that in *this* case, on the specific occasions on November 19, 2011 when he was accused of touching the complaining witness, [he] had the requisite mental state for conviction."

Our Supreme Court in *Falsetta*, upheld section 1108 against a due process challenge, stating section 1108 does not improperly alter or reduce the prosecutor's proof burden.  "As stated in [*People v.*] *Fitch* [(1997) 55 Cal.App.4th 172, 181-182, 63 Cal. Rptr. 2d 753], 'While the admission of evidence of the uncharged sex offense may have added to the evidence the jury could consider as to defendant's guilt, it did not lessen the prosecution's burden to prove his guilt beyond a reasonable doubt.' [Citations.]" (*Falsetta, supra*, 21 Cal.4th at p. 920.)

Here, there was ample evidence of Griffin's specific intent to commit lewd acts based on the victim's descriptions of his repeated touching of their genitals; his showering them with gifts; his telling one victim he would "kidnap" her and kill her father if she revealed his actions; his telling the other victim he would "kidnap" her and kill her mother; his having nicknames for his victims, one of which he had tattooed on his arm and the other he said he intended to have tattooed on his arm; his pleadings with one victim to come over to his house, even when she had other plans; and his inappropriate letters written to one of the victims.  The evidence of Griffin's prior sex crime and the material discovered on his computer merely added to the circumstantial evidence of his state of mind.

The *Falsetta* court further reasoned that a properly instructed jury will be given the usual instructions regarding the presumption of a defendant's innocence and the prosecutor's burden of proof.  (*Falsetta, supra*, 21 Cal.4th at p. 920.)  And, it reasoned, if the jury is additionally instructed that evidence of other sexual offenses is not sufficient by itself to prove the charges, such an instruction "will help assure that the defendant will not be convicted of the

charged offense merely because the evidence of his other offenses indicates he is a 'bad person' with a criminal disposition." (*Ibid.*)

In addition to the limiting instructions on the prior offense and computer evidence referenced above, the jury was instructed, pursuant to CALCRIM No. 221, on the requirement and meaning of the prosecution's burden of proving the charged crimes beyond a reasonable doubt.  The jury was also instructed, pursuant to CALCRIM No. 1191, that it could (but was not required to) find that Griffin was inclined to commit sexual offenses based on the stipulated fact that he had been convicted on sexual exploitation of a minor on a prior occasion.  The instruction stated that such a finding was "not sufficient by itself to prove that the defendant is guilty of lewd acts upon a child and sexual penetration of a child ten years of age or younger.  The People must still prove each charge beyond a reasonable doubt." (*Ibid.*)

Griffin's argument that the People's burden of proof was lessened is without merit, and he suffered no violation of his due process rights.

*Griffin*, No. F068898, at *25-28.

### 3. Analysis

To the extent Griffin argues that the appellate court's interpretation of state law is in error, such as Evidence Code § 1108 and *Falsetta*, the Court cannot grant him relief.  Federal habeas relief does not lie for errors of state law.  *Estelle v. McGuire*, 502 U. S. 62, 67-68 (1991) (explaining that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

To the extent Griffin claims that his federal due process rights were violated because the prosecutor's burden of proof was lessened, his claim fails.  The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).  A jury instruction that reduces the level of proof necessary for the government to carry its burden "is plainly inconsistent with the constitutionally rooted presumption of innocence." *Cool v. United States*, 409 U.S. 100, 104 (1972).  "All challenged instructions[, however,] must be considered in light of all of the jury instructions and the trial record as a whole." *Mendez v. Knowles*, 556 F.3d 757, 768 (9th Cir. 2009) (citing *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)).

Upon review of the record, there is no evidence to suggest the admission of the evidence

16

1  in question lightened the prosecutor's burden of proof.  The plain language of the trial court's

2  limiting instructions stated the prosecution was bound to prove Griffin guilty of the charged

3  crimes "beyond a reasonable doubt."  (LD 19 at 1010-20, 22).  Moreover, the jury was instructed

4  on the meaning of the prosecutor's burden of proof beyond a reasonable doubt with CALCRIM

5  No. 221.  Further, the jury was not required to find that Griffin committed the crimes based on his

6  prior sexual offenses under CALCRIM No. 1191.

7       Accordingly, the Court cannot find that the admission of Griffin's prior conviction and

8  computer evidence lightened the prosecutor's burden of proof, in violation of his due process

9  rights.  Therefore, the Court finds that the appellate court's rejection of Griffin's claim was not an

10  unreasonable application of clearly established federal law nor based on an unreasonable

11  determination of the facts.  The undersigned finds Griffin's claim should be denied.

12       **C.  Ground Two:  CSAAS Jury Instruction and CALCRIM No. 1193**

13            **1.  AEDPA's Deferential Standard Applies to this Ground**

14       Griffin claims that the trial court violated his right to due process when it instructed the

15  jury with CALCRIM No. 1193.  As an initial matter, Griffin urges the Court to review this claim

16  *de novo*, arguing that the appellate court "failed to adjudicate the federal aspect of this claim."

17  (Doc. No. 30 at 35).  Griffin's argument is unavailing.  "When a state court rejects a federal claim

18  without expressly addressing that claim, a federal habeas court must presume that the federal

19  claim was adjudicated on the merits . . . ."  *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

20  Accordingly, the Court presumes that the federal claim was adjudicated on the merits and

21  AEDPA's deferential standard applies.  Moreover, the appellate court titled the section addressing

22  this claim in terms of due process rights, characterizing it as a federal claim.  *See Griffin*, No.

23  F068898, at *36.

24            **2.  Background**

25       At trial, the prosecution presented evidence of CSAAS (Child Sexual Abuse

26  Accommodation Syndrome) through an expert witness.  (LD 18 at 833-59).  "CSAAS describes

27  various emotional stages, experienced by sexually abused children, that may explain their

28  sometimes piecemeal and contradictory manner of disclosing abuse."  *Brodit v. Cambra*, 350 F.3d

985, 991 (9th Cir. 2003).  Griffin assigns error to the trial court because it "allowed the jury to be instructed with CALCRIM No. 1193 which allowed CSAAS expert testimony to be considered when deciding whether the alleged victims were telling the truth."  (Doc. No. 30 at 33).  Griffin also argues that CALCRIM No. 1193 allowed the jury to assume that sexual abuse had occurred, which lightened the prosecutor's burden of proof.  (*Id*. at 34-35).

In response, Respondent first argues Griffin is not entitled to habeas relief on this ground because there is no Supreme Court case that prohibits the use of expert testimony to allow a jury to find a witness' statements are true.  (Doc. No. 43 at 27).  Next, Respondent argues CALCRIM No. 1193 explicitly prohibited the jury from using CSAAS evidence to determine that the witness' testimony was true.  (*Id*.).  Finally, Respondent argues CALCRIM No. 1193 did not lighten the prosecution's burden of proof because the jury was directed in other instructions that the prosecution was required to prove the essential elements of the criminal acts beyond a reasonable doubt.  (Doc. No. 43 at 28).

### 3. State Appellate Court Decision

On appeal, Griffin argued that CALCRIM No. 1193 deprived him of due process because it permitted the CSAAS testimony to be considered to decide if the complaining witnesses were telling the truth.  (LD 1 at 60-68).  The state appellate court rejected Griffin's claim in a detailed discussion:

> Pursuant to CALCRIM No. 1193, the jury was instructed as follows:
>
> "You have heard testimony regarding Child Sexual Abuse Accommodation Syndrome.  The testimony about Child Sexual Abuse Accommodation Syndrome is not evidence that the defendant committed any of the charges against him.  You may consider this evidence only in deciding whether or not [I.]'s or [M.]'s conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony."
>
> Griffin contends the instruction impermissibly allowed the jury to use the expert testimony on CSAAS to determine whether I. and M.'s molestation claims were true.  More broadly, he argues the instruction is contrary to settled law prohibiting the use of CSAAS evidence as evidence that the alleged victims' molestation claims are true.  For reasons we explain, it is not reasonably likely the jury applied the instruction in the impermissible manner Griffin claims.

It is long settled law in California that CSAAS testimony is admissible only for the limited purpose of disabusing the jury of any misconceptions it may hold concerning how child molestation victims commonly react or should react to being molested.  (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1744, 32 Cal. Rptr. 2d 345; *People v. Bowker* (1988) 203 Cal.App.3d 385, 394, 249 Cal. Rptr. 886.)  "'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior . . .. [Citation.]" (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1301, 283 Cal. Rptr. 382, 812 P.2d 563.)  "CSAAS *assumes* a molestation has occurred and seeks to describe and explain common reactions of children to the experience.  [Citation.]"  (*People v. Bowker, supra*, at p. 394.)

Griffin argues parts of CALCRIM No. 1193 which permit the jury to use CSAAS evidence in evaluating complaining witness's credibility is contrary to settled law regarding the relevance and use of CSAAS testimony.  He argues the instruction, in essence, is the same as telling the jury to use the CSAAS evidence to determine whether the victim's molestation claim is true.  Not so.

In addressing a claim of jury misinstruction, we assess the instructions as a whole and view the challenged instruction in context with other instructions to determine whether there was a reasonable likelihood the jury applied the challenged instruction in an impermissible manner.  (*People v. Jennings* (2010) 50 Cal.4th 616, 677, 114 Cal. Rptr. 3d 133, 237 P.3d 474.)  We also presume that the jury followed the court's instructions.  (*People v. Edwards* (2013) 57 Cal.4th 658, 746, 161 Cal. Rptr. 3d 191, 306 P.3d 1049.)  In light of CALCRIM No. 1193 in its entirety, and other instructions given, it is not reasonably likely the jury understood CALCRIM No. 1193 as allowing it to use the CSAAS evidence in determining that the molestation occurred or that I. and M.'s molestation claims were true.

The jury was initially instructed to "[p]ay careful attention to all of these instructions and consider them together" (CALCRIM No. 200), and that "certain evidence was admitted for a limited purpose" and to "consider that evidence only for that purpose and for no other" (CALCRIM No. 303).  CALCRIM No. 1193 then told the jury that the CSAAS evidence was not evidence that Griffin molested I. or M., and to use the CSAAS evidence "only" for the limited purpose of determining whether I. or M.'s conduct was inconsistent with the conduct of a child who had been molested "and in evaluating the believability of their testimony" that the molestations occurred.

Reading all of the instructions together, and each in light of the others, it is unlikely the jury interpreted CALCRIM No. 1193 as allowing it to use the CSAAS evidence in determining that the molestations occurred or that I. and M.'s claims were true, per se.

Rather, it is likely the jury understood CALCRIM No. 1193 as allowing it to use the CSAAS evidence in evaluating the

believability of I. and M.'s testimony that the molestation occurred, in light of the evidence that I. and M. engaged in conduct seemingly inconsistent with the conduct of a child who had been molested after the molestations occurred.

There is a distinction between using CSAAS evidence for the impermissible purpose of inferring a child's molestation claims are true — which the first clause of CALCRIM No. 1193 expressly prohibits — and using CSAAS evidence for the permissible purpose of evaluating the believability of the child's trial testimony that the molestations occurred in light of evidence that the child engaged in conduct seemingly inconsistent with the child's molestation claims, after the molestations allegedly occurred.  As stated in *People v. McAlpin, supra*, 53 Cal.3d at page 1300: Expert testimony on CSAAS "is admissible to rehabilitate [the child] witness's credibility when the defendant suggests that the child's conduct after the incident — e.g., a delay in reporting - is inconsistent with his or her testimony claiming molestation."  CALCRIM No. 1193 and the other instructions limited the jury's consideration of the CSAAS to its permissible purpose.

In sum, in view of the instructions as a whole, it is not reasonably likely the jury understood CALCRIM No. 1193 as allowing it to use the CSAAS evidence for the impermissible purpose of determining the molestations occurred or that I. and M.'s molestation claims were true.  Rather, the jury likely understood the instruction as permitting it to use the CSAAS evidence solely for the distinct and permissible purpose of evaluating I. and M.'s credibility as witnesses in light of the evidence that their conduct following the alleged molestations was seemingly inconsistent with the conduct of a child who had been molested.  We reject Griffin's claim to the contrary.

*Griffin*, No. F068898, at *36-40; (LD 19 at 1022-23).

### 4. Analysis

To obtain federal habeas relief for a jury instructional error, Petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process."  *See Estelle*, 502 U.S. at 72; *see also Waddington v. Sarausad*, 55 U.S. 179, 191 (2009).  Where an ambiguous or potentially defective instruction is at issue, the Court must ask whether there is a "reasonable likelihood" that the jury applied the challenged instruction in a way that violated the constitution. *See Estelle, id.*  Moreover, the instruction must be evaluated in the light of the instructions as a whole and the entire trial record.  *See id.*  A "slight possibility" that the jury misapplied the instruction is not sufficient.  *Weeks v. Angelone*, 528 U.S. 225, 236 (2000).

The record reflects the jury was <u>not</u> instructed to use the CSAAS evidence as proof that

crime had occurred or that the witnesses were telling the truth.  To the contrary, the jury was instructed that "[t]he testimony about Child Sexual Abuse Accommodation Syndrome is not evidence that the defendant committed any of the charges against him."  (LD 19 at 1022-230).  Indeed, the jury was instructed to use the CSAAS evidence "only in deciding whether or not [I.]'s or [M.]'s conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony."  (LD 19 at 1022-23).  Therefore, the jury could use the CSAAS testimony to assist in determining whether the witnesses' testimony was believable.  The instruction did not *require* the jury to find the child witnesses were telling the truth or that the alleged crime occurred.

Moreover, the appellate court considered Griffin's instructional error claim in the context of the other jury instructions given, as required by due process.  *Griffin*, No. F068898, at *38.  Elsewhere, the jury was instructed that the prosecutor had the burden of proving each alleged crime beyond a reasonable doubt.  For example, the jury was instructed with CALCRIM 221, which states that the prosecution is "required to prove the allegations beyond a reasonable doubt."  The jury was also instructed with CALCRIM 359, which states that "[y]ou may not convict the defendant unless the People have proved his guilt beyond a reasonable doubt."

Petitioner identifies no evidence and the record reveals none to support Petitioner's argument that the jury interpreted CALCRIM No. 1193 to mean that the jurors were required to find that petitioner committed the crime, that the witnesses were telling the truth, or that the prosecution's burden of proof was lightened.  Petitioner thus fails to show that the CALCRIM No. 1193 instruction "so infected the entire trial that the resulting conviction violates due process."  *See Estelle*, 502 U.S. at 72.  Accordingly, the Court cannot find that the appellate court's rejection of Griffin's claim was an unreasonable application of federal law or was based on an unreasonable determination of the facts.  To the contrary, the record evidence refutes Petitioner's claim.  The undersigned finds this ground should be rejected as without merit.

### D.  Ground Three:  Exclusion of the Victim's Prior Abuse Evidence

#### 1.  Background

Petitioner claims that the trial court erred when it excluded evidence of one of the victims'

21

prior history of molestation.  (Doc. No. 30 at 37-38).  Respondent argues that Griffin's claim is procedurally barred because the appellate court's decision rested on an independent and adequate state procedural law.  (Doc. No. 43 at 31-32).  In the alternative, Respondent argues that Griffin's claim fails on the merits because Griffin failed to show that the trial court's ruling violated his right to a fair trial.  (*Id*. at 33).  Specifically, Respondent argues that because the U.S. Supreme Court has "never established a principle for evaluating the discretionary exclusion of evidence under such state evidentiary rules," the appellate court's finding cannot be contrary to or an unreasonable application of clearly established federal law.  (*Id*.).

### 2. State Appellate Court Decision

The appellate court rejected Griffin's claims specifying several reasons in its detailed analysis:

> We reject Griffin's claim that the trial court prejudicially erred when it found specific facts or circumstances of I.'s prior molestation inadmissible.
>
> First, defense counsel did not file a motion, as required by section 782, and thus Griffin had no right to a pretrial hearing on the admission of the proffered evidence.  Section 782 requires the defendant to file a written motion to the court, and an affidavit with an offer of proof for why that evidence is relevant.  (§ 782, subd. (a)(1) & (2).)  If the court finds the offer of proof sufficient, it must order a hearing outside the presence of the jury and allow the complaining witness to be questioned regarding the offer of proof.  (§ 782, subd. (a)(3).)  At the conclusion of the hearing, the court can make an order stating what evidence may be introduced by the defendant and the nature of the questions permitted.  (§ 782, subd. (a)(4).)  This procedure applies to prosecutions for various sex crimes, including Penal Code section 288.  (§ 782, subd. (c)(1).)
>
> Second, as for the trial court ruling itself, the court amended its preliminary decision in order to address defense counsel's reasons for wanting to question I. about the prior incident.  It then ruled counsel could ask I. if she knew why Griffin was touching her, but could not go into the underlying facts and circumstances of the prior molest.  When asked if that alleviated his concern, defense counsel replied: "I think it's helpful.  I don't think I want to go into the prior specifics.  I think that just — it's just not helpful."
>
> Because counsel dropped his objection at that point, he cannot now claim the trial court erred in not holding a further hearing or preventing him from going into specifics of the prior incident.  (See *People v. Jones* (2003) 29 Cal.4th 1229, 1255, 131 Cal. Rptr. 2d 468, 64 P.3d 762 [withdrawal of objection to introduction of evidence forfeits issue on appeal]; see also *People v.*

22

1

2

*Robertson* (1989) 48 Cal.3d 18, 44, 255 Cal. Rptr. 631, 767 P.2d 1109 ["Defendant, having withdrawn his objection to the evidence, cannot now complain of its admission"].)

3

4

5

6

7

8

9

Finally, as for Griffin's claim that exclusion of the evidence denied him a fair trial or to confront witnesses against him, we disagree. There is no fair trial problem with exclusion of all such evidence under Evidence Code section 1103.  "That limited exclusion no more deprives a defendant of a fair trial than do the rules of evidence barring hearsay, opinion evidence, and privileged communications." (*People v. Blackburn* (1976) 56 Cal.App.3d 685, 690, 128 Cal. Rptr. 864.)  Therefore, because the trial court may properly exclude all such evidence without violating a defendant's fair trial rights, there is no merit to the argument that not admitting some of the evidence under Evidence Code section 782 deprives the defendant of a fair trial. (*People v. Mestas, supra*, 217 Cal.App.4th at p. 1517.)

10

*Griffin*, No. F068898, at *45-47.

11

### 3. Analysis

12

13

14

15

16

17

18

19

20

21

22

23

24

Federal habeas review is barred where a state prisoner has defaulted his federal claim in state court due to an independent and adequate state procedural rule.  *Coleman v. Thompson*, 501 U.S. 722, 250 (1991).  *See also Martinez v. Ryan*, 566 U.S. 1, 9–10 (2012); *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) ("Federal habeas courts lack jurisdiction . . . to review state court applications of state procedural rules.").  To preclude federal review, the state court must have relied on the independent and adequate procedural bar as the basis for the disposition. *Harris v. Reed*, 489 U.S. 255, 261-62 (1988).  A state law is "adequate" where the law is a "firmly established and regularly followed state practice."  *James* v. *Kentucky*, 466 U.S. 341, 348-51 (1984).  A state law is "independent" if it is not "interwoven with the federal law." *Michigan v. Long*, 463 U.S. 1032, 1040 (1983).  For a federal court to consider a procedurally defaulted claim, a petitioner must demonstrate cause for the procedural default and prejudice as a result of the alleged violation of federal law or that the federal court's failure to consider the claim will result in a fundamental miscarriage of justice.  *See Martinez*, 566 U.S. at 9-10.

25

26

27

28

To determine if this ground is procedurally barred, the Court looks to the last reasoned state court opinion.  Here, the state appellate court rejected Griffin's claims because he failed to comply with the requirements of California Evidence Code § 782.  California Evidence Code §

782 is an adequate state law ground because it is firmly established and regularly followed.

Section 782 was adopted in 1974 and has consistently required criminal defendants to precede the

testimony sought to be introduced "by a written motion . . . accompanied by an affidavit

containing an offer of proof." *People v. Blackburn*, 56 Cal. App. 3d 685, 691 (1976); *People v.

Sims*, 64 Cal. App. 3d 544, 553, (1976); *Wolcott v. Clark*, CIV S-08-2527 GEB GGH P, 2010 WL

444897, at *26-29 (E.D. Cal. Feb. 2, 2010). Section 782 is also "independent"—it is not

"interwoven" with federal law. *Long*, 463 U.S. at 1040. Section 782 stands solely on state law

requirements. Griffin has not presented any argument demonstrating that § 782 is not an

adequate and independent state law.

The fact that the state court also analyzed Griffin's claim on the merits is of no

consequence here. *Harris v. Reed*, 489 U.S. at 264 n. 10. Such an "on-the-merits" discussion is

an "alternative ruling"—the claim is nonetheless procedurally defaulted and barred from federal

review. *See Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992). Therefore, unless Griffin can

demonstrate cause for the default and prejudice arising from the alleged violation of federal law

or a fundamental miscarriage of justice, the ground is barred from review. *See Martinez*, 566

U.S. at 9-10. Griffin has not alleged yet alone made either of these showings. The undersigned

finds this ground is procedurally barred and thus declines to consider the merits of the claim.

### E. Ground Four: CALCRIM No. 318 and the "Fresh Complaint" Doctrine

#### 1. Background

Petitioner claims that the trial court violated his due process rights when it instructed the

jury with CALCRIM No. 318 under the "fresh complaint" doctrine.[7] (Doc. No. 30 at 3).

Respondent argues that the state appellate court's rejection of Griffin's claim was reasonable

because there is no firmly established federal law addressing the claim, or, in the alternative, that

Griffin failed to show that his due process rights were violated when the trial court rejected his

proffered instruction. (Doc. No. 43 at 21-24).

Under California law, "proof of an extrajudicial complaint, made by the victim of a sexual

---

[7] Petitioner states this claim in the introduction to his petition only. (Doc. No. 30 at 3). However, because both the appellate court and the Respondent address this argument the Court considers it.

offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose–namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others–whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred." *People v. Brown*, 8 Cal. 4th 746, 749-50 (1994). "[O]nly the fact that a complaint was made, and the circumstances surrounding its making, ordinarily are admissible; admission of evidence concerning details of the statements themselves, to prove the truth of the matter asserted, would violate the hearsay rule." *Id.* at 760 (citation omitted). Evidence of the circumstances under which a prompt complaint was made "may aid the jury in determining whether the alleged offense occurred," and evidence that a prompt complaint was made "will eliminate the risk that the jury, if not apprised of that fact, erroneously will infer that no such prompt complaint was made." *Id.* at 761. Evidence of a fresh complaint should be "carefully limited to the fact that a complaint was made, and to the circumstances surrounding the making of the complaint, thereby eliminating or at least minimizing the risk that the jury will rely upon the evidence for an impermissible hearsay purpose . . . ." *Id.* at 762.

Here, the allegations of sexual abuse came to light when M. told her sister about Griffin's behavior that made her uncomfortable. *Griffin*, No. F068898, at *29. I. then revealed the abuse to her mother through a letter. *Id.* When I. was interviewed by a CPS worker, she did not reveal the abuse, but she later revealed the abuse to Deputy Herzog. *Id.* Both I. and M. provided details of the abuse at a later MDIC (multi-disciplinary interview center) interview and testified at trial consistent with those statements. *Id.* at 30.

At trial, the court stated its intent to give CALCRIM No. 318 instruction, as requested by the prosecution. *Id.* The instruction states:

> "You have heard evidence of statements that witnesses made before the trial. Generally, if you decide that a witness made a particular statement, you may use that statement in two ways: 1. To evaluate whether the witness's testimony in court is believable; AND 2. As evidence that the information in that statement is true."

*Id.*

The defense requested to modify the instruction under the "fresh complaint" doctrine.

Specifically, the defense sought to have the jury instructed as follows:

> "However, as to the child witnesses, if you decide that a child witness made a particular written or unrecorded statement before the trial disclosing the offense(s) charged, you may use that statement only for the limited purpose of considering the fact of, and the circumstances surrounding, the child's disclosure.  You may, but are not required to, consider the fact that the disclosure was made and the circumstances under which it was made in determining whether the offense(s) have been proven to have occurred."

*Id*. at 32.

The trial court requested defense counsel to provide authority for the modification of CALCRIM No. 318 and defense counsel was unable to do so.  *Id*.  Accordingly, the trial court denied the defense's modification request.  *Id*.  The trial court thus instructed the jury with CALCRIM No. 318.  (LD 19 at 1018).  After the verdict was rendered, the trial court clarified its finding on CALCRIM No. 318, stating that the out of court statements made by the victims were admitted under the hearsay exception for prior inconsistent or consistent statements.  *Griffin*, No. F068898, at *32.

### 1.  State Appellate Court Decision

#### a.  Harmless Error Determination

The state appellate court, in rejecting Griffin's claim, found:

> We need not address whether the trial court erred, because any error concerning the failure to give a limiting instruction was harmless; it is not reasonably probable a different result would have been reached had such an instruction been given.  (See *People v. Watson* (1956) 46 Cal.2d 818, 836, 299 P.2d 243.)  Both I. and M. testified at trial.  Vanessa, Stella and Victoria's testimonies were merely consistent with and cumulative of I. and M.'s testimonies.  Vanessa testified, for example, that M. told her "things were happening that weren't supposed to," and I. and M. both told Vanessa that Griffin "cuddle[d]" and slept in the same bed with them and that they had seen photos of H. in her underwear on Griffin's phone.  Stella testified that when she first confronted I. about any possible abuse, I. did not say anything, but I. later wrote her a letter in which "[e]verything you don't want to be true is true."  The evidence was therefore merely cumulative, and cumulative statements that repeat facts established by other means are not prejudicial.  (*People v. Blacksher* (2011) 52 Cal.4th 769, 818, fn. 29, 130 Cal. Rptr. 3d 191, 259 P.3d 370; see also *People v. Manning* (2008) 165 Cal.App.4th 870, 881, 81 Cal. Rptr. 3d 452 [failure to give limiting

26

instruction is harmless error where victim testified at trial]; *People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1526, 50 Cal. Rptr. 3d 110 [admission of hearsay statements is harmless error where declarant testified at trial].)  In addition, because both I. and M. testified at trial, the jury could judge their credibility firsthand without relying on their "secondhand statements to other people." (*People v. Manning, supra*, at p. 881.)

As for Deputy Herzog's testimony, it was admissible as a prior consistent statement because it was introduced to rebut CPS worker Garcia's testimony that I. had denied Griffin abused her, suggesting I.'s testimony at trial was fabricated.  "A prior consistent statement is admissible as an exception to the hearsay rule if it is offered after admission into evidence of an inconsistent statement used to attack the witness's credibility and the consistent statement was made before the inconsistent statement, or when there is an express or implied charge that the witness's testimony was recently fabricated or influenced by bias or improper motive, and the statement was made before the fabrication, bias, or improper motive.  (Evid. Code, §§ 791, 1236.)"  (*People v. Kennedy* (2005) 36 Cal.4th 595, 614, 31 Cal. Rptr. 3d 160, 115 P.3d 472, disapproved on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459, 111 Cal. Rptr. 3d 589, 233 P.3d 1000.)  I.'s prior consistent statements to Deputy Herzog were admissible to rehabilitate her and to support her credibility after Garcia's testimony that I. reported no current abuse. To the extent, if any, that the trial court erred in failing to instruct the jury on the limited use of "fresh complaint" evidence, the error was harmless.

*Griffin*, No. F068898, at *33-35.

### b. Due Process Violation

The appellate court also addressed Griffin's argument that the trial court's refusal to modify the CALCRIM No. 318 instruction violated his due process rights.

Griffin also contends that the trial court's failure to give a limiting instruction violated his federal constitutional rights to present a complete defense and for the prosecution to prove its case beyond a reasonable doubt.  However, "[m]ere instructional error under state law regarding how the jury should consider evidence does not violate the United States Constitution."  (*People v. Carpenter* (1997) 15 Cal.4th 312, 393, 63 Cal. Rptr. 2d 1, 935 P.2d 708, abrogated on other grounds in *People v. Diaz* (2015) 60 Cal.4th 1176, 185 Cal. Rptr. 3d 431, 345 P.3d 62.)  Failure to give a limiting instruction, such as the one requested by Griffin, "is not one of the 'very narrow[]' categories of error that make the trial fundamentally unfair."  (*People v. Carpenter, supra*, at p. 392, quoting *Estelle v. McGuire* (1991) 502 U.S. 62, 73, 112 S. Ct. 475, 116 L. Ed. 2d 385.)  Thus, to the extent there was error, it was not of federal constitutional dimension.

1   *Griffin*, No. F068898, at \*35-36/

2       **3. Analysis**

3       When "a state court determines that a constitutional violation is harmless," as the

4   appellate court has done here, "a federal court may not award habeas relief under § 2254 unless

5   *the harmlessness determination itself* was unreasonable." *Fry v. Pliler*, 551 U.S. 112, 119 (2007)

6   (emphasis in original).  Harmless error is found where a constitutional error had a "substantial

7   and injurious effect or influence" on either a jury verdict or a trial court decision. *Brecht v.*

8   *Abrahamson*, 507 U.S. 619, 623 (1993).  A state-court decision is not unreasonable if "fairminded

9   jurists could disagree on [its] correctness." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  To

10  obtain relief, Petitioner must show that the state court's harmless error determination "was so

11  lacking in justification that there was an error well understood and comprehended in existing law

12  beyond any possibility for fairminded disagreement." *Id.*

13      The Court cannot find that the Court of Appeal's harmlessness determination was

14  unreasonable.  "Neither the exclusion nor the admission of cumulative evidence is likely to cause

15  substantial prejudice." *See Mejorado v. Hedgpeth*, 629 F. App'x. 785, 787 (9th Cir. Oct. 29,

16  2015) (citing *Wong v. Belmontes*, 558 U.S. 15, 22-23 (2009)).  As found by the appellate court,

17  the evidence in question was cumulative of the evidence presented at trial and therefore there was

18  no reasonable probability that a different result would have occurred.  Petitioner fails to show

19  how the Court of Appeal's harmlessness determination was "so lacking in justification that there

20  was an error well understood and comprehended in existing law beyond any possibility for

21  fairminded disagreement." *Harrington*, 562 U.S. at 101.

22      The record reflects that the victim's prior statements to her mother, her sister, the CPS

23  worker, and Deputy Hertzog, when considered in light of her own testimony, did not have a

24  "substantial and injurious effect of influence in determining the jury's verdict." *Brecht*, 507 U.S.

25  at 637-38.  The testimony was cumulative, and all witnesses were subject to cross examination.

26  The Court is unable to find, and Petitioner fails to demonstrate in light of the jury instructions and

27  record as a whole, that a limiting or modified instruction regarding the fresh complaint doctrine

28  would have resulted in a more favorable outcome at trial.  The undersigned finds Griffin should

1   be denied relief on this ground.

2   ## IV.  CERTIFICATE OF APPEALABILTY

3   State prisoners in a habeas corpus action under § 2254 do not have an automatic right to

4   appeal a final order.  *See* 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36

5   (2003).  To appeal, a prisoner must obtain a certificate of appealability.  28 U.S.C. § 2253(c)(2);

6   *see also* R. Governing Section 2254 Cases 11 (requires a district court to issue or deny a

7   certificate of appealability when entering a final order adverse to a petitioner); Ninth Circuit Rule

8   22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).

9   Here, the Court recommends dismissal of one of the grounds on procedural grounds and

10  recommends denial of the remaining grounds on the merits.  Where the court denies habeas relief

11  on procedural grounds without reaching the merits of the underlying constitutional claims, the

12  court should issue a certificate of appealability only "if jurists of reason would find it debatable

13  whether the petition states a valid claim of the denial of a constitutional right and that jurists of

14  reason would find it debatable whether the district court was correct in its procedural ruling."

15  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "Where a plain procedural bar is present and the

16  district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude

17  either that the district court erred in dismissing the petition or that the petitioner should be

18  allowed to proceed further."  *Id*.  Where a court denies habeas claims on the merits, the petitioner

19  is required to show that "jurists of reason could disagree with the district court's resolution of his

20  constitutional claims or that jurists could conclude the issues presented are adequate to deserve

21  encouragement to proceed further."  *Miller-El*, 537 U.S. at 327.  Here, reasonable jurists would

22  not find the undersigned's conclusion debatable or conclude that petitioner should proceed

23  further.  The undersigned therefore recommends that a certificate of appealability not issue.

24  Accordingly, it is **RECOMMENDED**:

25  1.      Petitioner be denied all relief on his Petition (Doc. No. 30).

26  2.      Petitioner be denied a certificate of appealability.

27  ## NOTICE TO PARTIES

28  These findings and recommendations will be submitted to the United States district judge

assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within fourteen

(14) days after being served with these findings and recommendations, a party may file written

objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

Findings and Recommendations."  Parties are advised that failure to file objections within the

specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


Dated:    September 8, 2021

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE